ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

SEAMUS LYONS & NOEL NELSON,

       Plaintiffs,

vs.

**COMPLAINT**

STATE OF NEW YORK, DIVISION OF
POLICE,

       Defendant.

------------------------------------------------------------

15 CV 3669

JUDGE ROMAN

By and through their attorneys, Sussman & Watkins, plaintiffs allege as to defendant:

## I. PARTIES

1. Plaintiff Seamus Lyons [hereinafter "Lyons"] is an adult who resides within this judicial district.  He is Caucasian and worked for more than 12 years with the New York State Police as a state trooper.

2. Plaintiff Noel Nelson [hereinafter "Nelson"] is an adult who resides within this judicial district.  He is African-American and worked for more than 27 years for the New York State Police, most recently as an investigator.

3. Defendant, the State of New York, through its Division of Police, [hereinafter "defendant"] is plaintiffs' former employer and does business within this judicial district.

II. **JURISDICTION**

4. On November 12, 2012 and again on July 22, 2013, plaintiff Nelson timely dual filed separate charges of racial discrimination and then racial discrimination and retaliation with the New York State Division of Human Rights and the EEOC. [Exhibits 1 and 2].

5. The EEOC has issued plaintiff Nelson a right to sue letter within the ninety days preceding the filing of this lawsuit. [Exhibit 3].

6. While employed by the State Police, plaintiff Lyons both participated in the investigation of plaintiff Nelson's charges of discrimination and opposed racial discrimination and retaliation by the defendant.

7. This Honorable Court has subject matter jurisdiction over defendant pursuant to 42 U.S.C. section 2005(e), et. seq. and 42 U.S.C. section 1981, as made actionable in this Court by 28 U.S.C. sections 1331 and 1342, and 42 U.S.C. section 1988.

III. **STATEMENT OF FACTS**

8. At all relevant times, plaintiffs worked for the New York State Police, assigned to Troop K which comprehends, *inter alia*, the Tarrytown and Hawthorne barracks [hereinafter "SP Hawthorne" and ""SP Tarrytown"]

9. Plaintiff Nelson was hired as a trooper on October 1, 1984 and promoted to the title of Investigator on December 20, 1990.

10.  Between 1990 and 2011, plaintiff Nelson received numerous awards and commendations for his work.

11.  On July 28, 2010, plaintiff Nelson, then an investigator with the Bureau of Criminal Investigations [hereinafter "BCI"], received an order to transport certain evidence from the Mid Hudson Regional Crime Lab in Newburgh, New York to an evidence locker at the Hawthorne barracks.

12. On July 28, 2010, in a state police vehicle, plaintiff Lyons drove plaintiff Nelson to SP Newburgh to obtain that evidence.

13. On July 28, 2010, plaintiffs delivered the evidence, which included cocaine and marijuana, to SP Hawthorne; Nelson secured the same in the evidence locker at that station and signed that evidence into that evidence locker.

14. Plaintiff Nelson recorded this delivery in a log [General Order 2] maintained at the Hawthorne station by the evidence custodian.

15.  At a time unknown, but during the ensuing fifteen months, the narcotics which plaintiff Nelson so delivered to SP Hawthorne was taken from the evidence locker without recordation.

16.  During the same fifteen months, the State Police audited the evidence at the Hawthorne station on several occasions and never reported missing the narcotics which Nelson had delivered thereto on July 28, 2010.

17. At the time the evidence was stolen, Investigator Kim Campos was the evidence custodian for the Troop K Headquarters Vault and Senior Investigator Robert Bennett was responsible for SP Hawthorne's BCI unit, including the evidence locker for that station.

18. In March 2011, before the theft of the evidence plaintiffs had conveyed was discovered, it was determined that 98 oxycodone pills, evidence relevant to another criminal case, had been stolen from the evidence locker at SP Hawthorne.

19. The State Police commenced an investigation which revealed that Senior Investigator Bennett had a history of alcohol problems and that his wife had a substance abuse issue, specifically with oxycodone.

20. While the investigation of the missing 98oxycodone pills continued, Senior Investigator Bennett remained in his position as the supervisor of the Hawthorne BCI unit with full access to the evidence locker.

21. In early September 2011, long before defendant lodged disciplinary charges against plaintiffs and before defendant even initiated any investigation of the missing evidence which plaintiffs had conveyed to SP Hawthorne, the Dutchess County District Attorneys' office, acting on information developed by Troop F's Major Crimes unit, initiated criminal proceedings against Bennett's wife, including two felonies for forging prescriptions to narcotic substances.

22.  During the course of the investigation which culminated in these criminal charges, it was determined that eight different doctors allegedly prescribed Robert Bennett controlled substances during the prior year and that several of these doctors had no record of signing any such scripts.

23.  It was also determined that Bennett's wife, Erin Bennett, was employed as an LPN at the medical group from which several of the unauthorized scripts originated.

24. Bennett's wife ultimately pled guilty to a misdemeanor forgery charge.

25. In light of his wife's addiction and his own, the State Police had a reasonable basis to conclude that Senior Investigator Bennett, who had access to proscribed substances, was responsible for the narcotics missing from SP Hawthorne's evidence vault.

26. However, despite this reasonable basis, defendant did not bring disciplinary charges against this Caucasian member and, instead, permitted him to retire effective August 30, 2011, though an internal audit concluded that "[I]n far too many cases errors should have been detected and corrected at this level.  Former Senior Investigator Bennett was allowed to ignore his supervisory responsibilities and to actively mismanage his operation at SP Hawthorne...This led to...backlogs of evidence at the station and troop level."

27. By March 2012, the state police had concluded that Bennett was a "target in the missing evidence case," a reference to the theft of 98 oxycodone pills from the SP Hawthorne evidence locker.

28. Neither plaintiff had anything to do with the theft and/or appropriation of this evidence.

29. During the same fifteen months, Investigator Kim Campos, custodian of the log showing delivery of this and other evidence to the Hawthorne station, took that record from SP Hawthorne and did not advise anyone that drugs for which she was responsible were missing.

30. In September 2011, acting through its agents, defendant determined that the narcotics Nelson had delivered were missing and began an investigation which included interviews with both Nelson and Lyons.

31. In an internal report representing the conclusions of this internal investigation and issued March 30, 2012, the State Police determined that "without appropriate authorization," Investigator Campos, who is Caucasian, transferred other evidence relating to the same underlying incident, known as items 3 and 4 and described as a dagger and Capt. Morgan bag, to SP Poughkeepsie and destroyed the same on November 15, 2010 and, by so doing, she failed to exercise diligence in the performance of her duties.

32.  The same investigation concluded that plaintiff Nelson "relayed evidence from mid Hudson Lab and reported same at SP Hawthorne on 7/28/10" but that this evidence "remains missing/ unaccounted  for".

33.  The March 30, 2012 State Police investigative report does not attribute any blame for the loss of this evidence to plaintiff Nelson and never claims that he failed to deliver the evidence as directed.

34. Nor does the March 30, 2012 investigative report as much as mention plaintiff Lyons.

35.  The investigative report does note numerous instances of unauthorized destruction of evidence, while recognizing that no discipline could be imposed in several such cases due to the "18 month discipline rule."

36.  Between October 5, 2011 and December 28, 2011, plaintiff Lyons was ordered to provide four statements concerning the evidence transfer which he and plaintiff Nelson executed on July 28, 2010.  Defendant's agents advised plaintiff Lyons that he was only a witness and not a target of any criminal charges.

37.  During the course of providing his statements, it became apparent to plaintiff Lyons that the Division of State Police wanted him to provide them with information concerning plaintiff Nelson which was not true, most materially, they sought to have Lyons blame Nelson for the missing narcotics.

38.  During these interviews, plaintiff Lyons refused to blame Nelson for the missing narcotics and, to the contrary, supported plaintiff Nelson's version of events, most critically the retrieval of the evidence from Newburgh and its delivery to SP Hawthorne on July 28, 2010.

39.  In December 2011, defendant's agents again interviewed plaintiff Lyons, confronting him with records which demonstrated that rather than drive directly from the Mid-Hudson State Police Lab, he and Nelson had remained in Orange County following their retrieval of the evidence.

40.  Plaintiff Lyons had not recalled these events during his first two interviews as they were immaterial to the fact that he and Nelson had retrieved the relevant evidence and delivered it, as directed, to SP Hawthorne.

41.  Upon being confronted with these records, plaintiff Lyons did recall that after retrieving the evidence, he and Nelson sought out a witness in an unrelated criminal case, met with another investigator, Skylar King, and stopped at a local farm stand to purchase apple pie.

42.  The conduct of these activities did not change the material fact: that plaintiffs did pick up the evidence at the State Police lab in Newburgh and dropped the evidence at SP Hawthorne.

43.  Effective October 10, 2011, acting through its agent, Captain Lisa Loughran and in light of the pendency of the investigation into the retrieval and delivery of

8

the now missing evidence, acting through its agents, defendant transferred plaintiff Nelson from SP Tarrytown to SP Hawthorne.

44. This transfer was explicitly implemented pending completion of the investigation of the "stolen" cocaine.

45. Concurrently, defendant stripped plaintiff Nelson of the his prior jurisdiction as an investigator, disallowed him accessing the evidence locker at SP Hawthorne and substantially curtailed the regular overtime pay which he had received for many years.

46. At the same time it so acted against plaintiff Nelson, defendant took no similar action against plaintiff Lyons who had been equally involved in the retrieval and delivery of the evidence.

47. The defendant proceeded against Nelson the month after the presentation of criminal charges against Erin Bennett for two felonies of forging prescriptions for painkillers and several months after the early retirement of Senior Investigator Robert Bennett, a Caucasian, who had been in charge of the evidence locker and all BCI operations at SP Hawthorne in 2010-11.

48. Bennett had complete access to the narcotics – cocaine – which plaintiffs delivered to SP Hawthorne on July 28, 2010 and as of early October 2011, when it took adverse action against plaintiff Nelson, defendant knew that Bennett had a

motive and an opportunity to steal this evidence as he had done on a prior occasion with another proscribed substance to which his wife was addicted .

49. Following his transfer from SP Tarrytown, defendant subjected plaintiff Nelson to extensive micro-management, including by subordinate members.

50. Following this transfer from SP Tarrytown, defendant forbade plaintiff Nelson from handling evidence and disallowed him from continuing unfinished criminal investigations or commencing/fully handling investigations about which troopers called him.

51. On October 8, 2011, plaintiff Nelson's day off, Lt. Dominic Chiumento contacted him and advised him to respond to a counterfeit money seizure on the thruway.

52. Plaintiff Nelson did respond and as he did so, he received notice that another trooper was awaiting him at the station, at command's direction, to accompany him into the evidence locker.

53. Through this event, the fact that Investigator Nelson had been disallowed from accessing the evidence locker, a rather basic function of an investigator, became common knowledge.

54. This micro-management and the curtailment of his responsibilities stigmatized plaintiff and caused him severe emotional distress.

55. On October 12, 2011, plaintiff Nelson contacted the Office of Human Resources, New York State police and reported that he had been reassigned, contrary to the treatment of any of the other Caucasian investigators who worked under Bennett.

56. On October 17, 2011, Human Resources confirmed that no other investigator whose evidence was subject to potential tampering by Sr. Inv. Bennett had been moved, including Investigator Campos, the Troop K evidence custodian.

57. On November 7, 2011, a senior investigator assigned to the NY State Police Office of Human Resources, Jerome John, met with the responsible Colonel and advised that during the course of the IAB investigation into the "stolen" narcotics, none of the white investigators was removed from their assignments but Inv. Nelson, the only minority member, was reassigned "giving the appearance that he is being treated differently than other investigators.

58. The responsible Colonel agreed with the assessment by Human Resources and stated that he would advise field command that IAB had no reason to support Investigator Nelson's continued reassignment to SP Hawthorne and would request that Field Command return Nelson to his original assignment at SP Tarrytown.

59. However, this did not occur and defendant refused to normalize plaintiff Nelson's assignment.

60. In or about March 2012, defendant completed its investigation into the disappearance of the evidence plaintiff Nelson had placed in the SP Hawthorne station evidence vault on July 28, 2010.

61. Upon completion of this investigation, defendant lodged no charges of any kind against either plaintiff.

62. No charges were lodged despite the fact that, by March 2012, defendant and its agents knew that both plaintiffs had failed to recall some of the activities they engaged in after retrieving the evidence on July 28, 2010 and before returning that evidence to SP Hawthorne.

63. Indeed, despite the difference in the initial recall of both plaintiffs and their eventual recollection of their activities, as known by defendant by March 2012, neither received any form of discipline or counseling.

64. Nor, despite finding significant misconduct against the Caucasian custodian of the evidence locker, Kim Campos, defendant did not bring her up on disciplinary charges.

65. Defendant did not do so despite the fact that thefts from the evidence locker caused the Westchester County District Attorneys' Office to move to dismiss or reduce charges in at least eight pending criminal cases and compromised law

enforcement in the County and it was plainly Investigator Campos' responsibility to safeguard said evidence.

66.  Moreover, in April 2012, Lt. Dominick Chiumento, following the completion of the investigation of the July 28, 2010 incident, commenced a review of numerous items of missing evidence from Troop K.

67.  Ten months later, Lt. Chiumento reported to the Troop K commander, Major Michael Kopy ,that even after an extensive search through state evidence records, 65 items of tangible evidence and/or documents remained unaccounted for.

68.  In or about November 16, 2012, as his work situation had NOT by then been regularized and he continued to be marginalized and denied the opportunity to perform his job functions, plaintiff Nelson filed a charge of racial discrimination with the New York State Division of Human Rights [SDHR].

69.  In this charge, plaintiff Nelson identified plaintiff Lyons as a person who could act as a witness, noting, "He has been witness to the double-standard treatment I have received and saw that I was transferred without cause as well as having suffered through demeaning interviews.  He was interviewed by Internal Affairs who accused him of being a liar and said to him that I had asked him to lie and cover up for me."

70.  In the course of the subsequent investigation of plaintiff Nelson's charge, as well as a prior like internal complaint which plaintiff Nelson filed, plaintiff Lyons

supported co-plaintiff's claim that he had been subjected to disparate treatment and racial discrimination.

71.  Specifically, plaintiff Lyons corroborated co-plaintiff Nelson's claim that he had delivered the cocaine to SP Hawthorne on July 28, 2010 and explained that he, Lyons, had not been stripped of his duties or transferred as had Nelson though they retrieved the narcotics together and he drove plaintiff Nelson back to SP Hawthorne with the narcotics.

72.  Plaintiff Lyons also explained that SP Tarrytown, to which both plaintiffs were assigned, long had a reputation as a "minority" station, denigrated by both white officers and State Police brass.

73.  Plaintiff Lyons also attested to the integrity displayed through many years of service by plaintiff Nelson and the high regard other members of law enforcement had for Nelson.

74.  In early March 2013, though it had concluded its investigation into the disappearance of the cocaine and marijuana plaintiffs had transported from Newburgh to Hawthorne a year earlier and not taken any action based upon the same available information, defendant now charged both plaintiffs with giving failing to comply with a lawful directive by providing false statements during its internal investigation of the narcotics they delivered in July 2010.

75.  While these disciplinary charges were baseless, on March 27, 2013, plaintiff Nelson resigned from the defendant's employ because, by then, he had been subjected to 30 months of disparate treatment, reduced responsibilities and false accusations and did not foresee his employment status improving.

76.  Plaintiff Lyons chose not to resign and on April 17, 2013, defendant appointed a three person Board of Hearing to consider the evidence against him on the belated charges that he had made false statements concerning his activities on July 28, 2010.

77.  This panel met for eleven hours on May 2, 2013.

78.  That Board issued its findings on May 8, 2013, rejecting plaintiff Lyons' termination from the State Police and, instead, recommending a 60 day suspension without pay.

79. On or about May 13, 2013, plaintiff Lyons provided the a witness statement to SDHR as part of its ongoing investigation of plaintiff Nelson's charge of racial discrimination.

80.  Said statement attested to the racial discrimination to which co-plaintiff Nelson had been subjected.

81.  SDHR staff made reference to said statement in its probable cause determination in plaintiff's Nelson case [#10158601], a document it mailed to defendant on May 15, 2013.

82. As of May 30, 2013, defendant's agents, including the Superintendent, knew that through his statement to the SDHR, plaintiff Lyons had strongly supported plaintiff Nelson's claim that he had been targeted on account of his race and suffered disparate treatment.

83. On May 30, 2013, defendant's Superintendent drafted and conveyed to subordinates a document terminating plaintiff Lyons' employment with the State Police despite the recommendation of the three person disciplinary panel which he had appointed that Lyons receive a sixty day unpaid suspension for giving false statements about his activities on July 28, 2010 during his first two interviews with defendant's agents in October 2011.

84. In their recommendation rejecting termination, the three officer panel cited plaintiff Lyon's sterling career, his record as one of the most productive officers in the State Police, the high regard and esteem with which others in law enforcement held him and the benefit of his continued service to the public.

85. On May 30, 2013, at the Superintendent's direction, plaintiff Lyons' superior officer called plaintiff Lyons to a meeting, handed him the memorandum from the Superintendent terminating him and told him that he had ten minutes to decide whether to accept this recommendation of termination or resign on the spot.

86.  At the time he was given this option, defendant had not shared with plaintiff Lyons the decision and recommendation of the disciplinary panel or the content of that decision and recommendation.

87.  Under duress, plaintiff Lyons chose to resign so as to salvage his career in law enforcement as he knew that termination from the state police would be the death knell of that career.

88.  At the time defendant threatened to terminate plaintiff Lyons, defendant had information available to it which showed that plaintiffs spoke truthfully when they both stated that on July 28, 2010, they delivered the drugs from the State Lab in Newburgh to SP Hawthorne.

89.  Sr. Investigator Jerome John served as an EEO Counselor for the State Police.

90.  In October 2011, he began investigating plaintiff Nelson's claim that he was the target of the Internal Affairs Bureau [IAB] investigation, though the weight of the evidence pointed to Robert Bennett as the person most likely to have taken the returned drugs from the evidence locker at SP Hawthorne.

91.  During his investigation, Sr. Inv. John gained access to SP Hawthorne's surveillance tapes from July 28, 2010.

92.  On these tapes, Sr. Inv. John observed a marked State Police Chevrolet Tahoe, the vehicle plaintiff Lyons drove to that facility on that day, leaving the gate in the time frame plaintiffs were at SP Hawthorne.

93. However, plaintiffs' prior counsel was not provided a copy of the surveillance tapes.

94. Plaintiff Lyons advised Sr. Inv. John, of his belief that plaintiff Nelson was being targeted and subject to disparate treatment.

95. During prior administrative proceedings, defendant has intentionally withheld pertinent documents from both plaintiffs, rendering these prior proceedings unfair as a matter of law and depriving them of a full and fair opportunity to present their defenses.

96. Specifically, plaintiffs have been denied of the records demonstrating that numerous other officers and investigators have committed serious infractions of defendant's rules without being subjected to termination or the threat of termination.

97. Defendant has also denied plaintiff access to the surveillance tape available from July 28, 2010 and the General order # 2 which documented the delivery by plaintiff Nelson of evidence to SP Hawthorne on July 28, 2010.

98. By dint of the disparate and retaliatory treatment defendant accorded him, plaintiff Nelson has suffered pecuniary and non-pecuniary damages.

99. By dint of the unlawful retaliation defendant accorded him, plaintiff Lyons has suffered pecuniary and non-pecuniary damages.

IV. **CAUSES OF ACTION**

100. Plaintiffs incorporate paras. 1-99 as if fully included herein.

101. By discriminating against plaintiff Nelson on the basis of his race, defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e-5, et seq.

102. By retaliating against plaintiff Nelson for his protected EEOC-related activity, defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e-5, et seq.

103. By retaliating against plaintiff Lyons for his activity in support of the civil rights claims advanced by co-plaintiff Nelson, defendant violated 42 U. S.C. section 1981.

## V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Court accept jurisdiction over this matter, empanel a jury to hear and decide all issues within its scope, award to plaintiff make whole relief, including compensatory damages for pecuniary and non-pecuniary loss with pre- and post-judgment interest, reinstate plaintiff Lyons to his former position with the New York State Police, award to plaintiff reasonable attorneys' fees and reasonably incurred litigation expenses and enter any other order the interests of justice and equity require.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & WATKINS
PO BOX 1005
1 RAILROAD AVENUE
GOSHEN, NEW YORK 10924
(845)-294-3991

Counsel for Plaintiffs

Dated;  May 11, 2015

Exhibit "1"



# New York State Division of Human Rights
## Complaint Form

## CONTACT INFORMATION

**My contact information:**

Name: Noel NJ Nelson

Address: 4784 Boston Post Road                    Apt or Floor #: A43

City: Pelham Manor                    State: NY          Zip: 10803

## REGULATED AREAS

**I believe I was discriminated against in the area of:**

☒ Employment                  ☐ Education                    ☐ Volunteer firefighting

☐ Apprentice Training          ☐ Boycotting/Blacklisting      ☐ Credit

☐ Public Accommodations        ☐ Housing                      ☐ Labor Union, Employment
*(Restaurants, stores, hotels, movie*                                        Agencies
*theaters amusement parks, etc.)*  ☐ Commercial Space

## I am filing a complaint against:

Company or Other Name: Division of State Police

Address: 1220 Washington Avenue, Building 22, State Campus

City: Albany                    State: NY          Zip: 12226

Telephone Number: 518       436      2825
                  (area code)

Individual people who discriminated against me:

Name: Lisa Loughran                    Name: Dominick Chiumento

Title: Captain                    Title: Lieutenant

## DATE OF DISCRIMINATION

The most recent act of discrimination happened on:    March      01      2012
                                                      month      day     year

Continuation – page 3 complaint form:

Individual people who discriminated against me:

Name:___James Murphy_____

Title:____Lieutenant_____

Name:___Michael Kopy_____

Title:_____Major_____

## BASIS OF DISCRIMINATION

*Please tell us why you were discriminated against by checking one or more of the boxes below.*

 You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note:** Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Familial Status is a basis only in Housing and Credit complaints). These exceptions are listed next to the types of discrimination below.

### I believe I was discriminated against because of my:

| | |
|---|---|
| ☐ **Age** *(Does not apply to Public Accommodations)* <br> Date of Birth: | ☐ **Genetic Predisposition** *(Employment only)* <br> Please specify: |
| ☐ **Arrest Record** *(Only for Employment, Licensing, and Credit)* <br> Please specify: | ☐ **Marital Status** <br> Please specify: |
| ☐ **Conviction Record** *(Employment and Credit only)* <br> Please specify: | ☐ **Military Status:** <br> Please specify: |
| ☐ **Creed / Religion** <br> Please specify: | ☐ **National Origin** <br> Please specify: |
| ☐ **Disability** <br> Please specify: | ☒ **Race/Color or Ethnicity** <br> Please specify: <br><br> Black male |
| ☐ **Domestic Violence Victim Status:** <br> *(Employment only)* <br> Please specify: | ☐ **Sex** <br> Please specify: ☐ **Female** ☐ **Male** <br>     ☐ **Pregnancy** <br>     ☐ **Sexual Harassment** |
| ☐ **Familial Status** *(Housing and Credit only)* <br> Please specify: | ☐ **Sexual Orientation** <br> Please specify: |
| ☐ **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)* <br><br> Please specify: ||

 Before you turn to the next page, please check this list to make sure that you provided information *only* for the type of discrimination that relates to your complaint.

# EMPLOYMENT DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment. If not, turn to the next page.*

**How many employees does this company have?**

☒) 1-3          ☒) 4-14          ☒) 15 or more          ☒) 20 or more          ☒) Don't know

**Are you currently working for the company?**

☒ **Yes**

Date of hire:  ( __10__ / __01__ / __1984__ )     What is your job title? Investigator
                 Month    day    year

☐ **No**

Last day of work:  ( _____ / _____ / _____ )     What was your job title? _____
                 Month    day    year

☐ **I was not hired by the company**

Date of application: ( _____ / _____ / _____ )
                 Month    day    year

## *ACTS OF DISCRIMINATION*

**What did the person/company you are complaining against do? Please check all that apply.**

☐ Refused to hire me

☐ Fired me / laid me off

☐ Did not call me back after a lay-off

☐ Demoted me

☐ Suspended me

☐ Sexually harassed me

☐ Harassed or intimidated me (other than sexual harassment)

☐ Denied me training

☐ Denied me a promotion or pay raise

☐ Denied me leave time or other benefits

☐ Paid me a lower salary than other workers in my same title

☒ Gave me different or worse job duties than other workers in my same title

☐ Denied me an accommodation for my disability

☐ Denied me an accommodation for my religious practices

☒ Gave me a disciplinary notice or negative performance evaluation

☒ Other: subjected me to investigation with no resolution & damaged my professional reputation

6

**DESCRIPTION OF DISCRIMINATION** - for <u>all complaints</u> (Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)

Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory. **PLEASE TYPE OR PRINT CLEARLY.**

I am employed as an Investigator with the New York State Police. I have 28 years police experience with the State Police with 22 of those years as an investigator in the State Police Bureau of Criminal Investigation. On October 3, 2011 I was notified by Captain Lisa Coughran, Troop K BCI that I was transferred from SP Tarrytown to SP Hawthorne pending the outcome of an investigation into missing cocaine and a computer. This transfer resulted after I disclosed to my superiors on September 26, 2011 my suspicions that a Senior Investigator, Robert Bennett with a history of alcohol problems may have been involved with the missing computer and by inference the missing cocaine. There had previously been a State Police internal investigation into 98 missing Oxycodone pills from an evidence item of 100 pills and Sr. Inv. Bennett was a suspect in that case but never charged and eventually allowed to retire. During the course of the investigation into the actions of Sr. Inv. Bennett, who is white, he was allowed to remain at his station, SP Hawthorne, and in charge of the station evidence locker of which he was under investigation for removing evidence. Based on information and belief Sr. Inv. Bennett is friends with Lt. Dominick Chiumento and Lt. James Murphy both of whom are State Police BCI Lieutenants in Troop K and who were involved with the investigation into the missing Oxycodone pills and subsequent inquiry into the missing cocaine and computer. Sr. Inv. Bennett has publicly stated on several occasions that he was "taken care of" by Chiumento and Murphy and that they were "good guys" who "had my back". In fact, prior to his retiring from the State Police, Bennett was taken to lunch by Chiumento and Murphy and a State Police Internal Affairs lieutenant who had been involved in the investigation of the missing Oxycodone pills. This is very different from the treatment that I, a black police officer with an excellent service record, received once I made my State Police superiors aware of a missing computer and linked it's disappearance to Sr. Inv. Bennett who had previously been unsuccessfully investigated for missing drugs and was now the likely suspect in missing cocaine. However, because I had been the police officer of record who transferred the missing cocaine from the State Police Mid-Hudson Lab in Newburgh to the evidence locker at SP Hawthorne and the drugs were now missing from the SP Hawthorne evidence locker I was now the subject of the investigation and not the likely suspect Sr. Inv. Bennett. As a point of fact, after the October 3rd transfer notice from Capt. Coughran I was advised by Lt. Chiumento that I was not allowed to have access to the evidence locker. On October 8, 2011 while off duty I received a call from Lt. Chiumento to respond to the Hawthorne barracks to respond to a counterfeit money investigation/arrest on my day off. Approximately $3,000.00 in counterfeit money was seized and I had to respond on my day off because a regular station investigator, Joseph Becerra, was not available. I did not have recall duty that day, but went in because it was a Troop K arrest and that was my area of coverage. There was a great deal of work on the case and 4 defendants and it took some time to process the case. Lt. Chiumento called the unavailable duty investigator, Joseph Becerra, several times and told him to tell me to hurry up and then had Becerra meet me at the station at 2:00 a.m. solely for the purpose of securing the evidence because I was not allowed to. This was not only embarrassing in front of a peer but damaging to the sterling reputation I had maintained as an investigator with the State Police. This has been a continuing source of embarrassment and ridicule as I am constantly chided by co-workers anytime I go near the evidence locker. Other State Police members will make siren sounds or ask "can you go in there" when I am near the evidence locker. Despite the fact that a white Sr. Inv. with documented alcohol problems was already a suspect in the theft of Oxycodone pills and that connected him to a missing computer the State police, specifically Captain Coughran and Lieutenants Chiumento and Murphy, have decided to link me with missing cocaine. This is completely disingenuous on their part since first and foremost I had nothing to do with the missing evidence other than to have picked it up from the Mid-Hudson Lab on July 28, 2010 and properly secure in the SP Hawthorne evidence locker and Second, there are numerous other evidence items missing from the SP Hawthorne evidence, including a gun and other drugs, which the State Police have sought to hide by

If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form. **PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.**

**Continuation – page 8 complaint form:**

having the Westchester County District Attorney's Office dismiss the warrant cases attached to those missing evidence items. There are 8 other State Police cases that are being considered for dismissal or have been dismissed by the Westchester County District Attorney's Office because of missing evidence from the SP Hawthorne evidence locker. Based on information and belief Captain Loughran has personally gone to the Westchester County District Attorney's Office to ask for these dismissals. During her trip to the District Attorney's Office she was accompanied by Senior Investigator Matt Laspisa. While the State Police, particularly Troop K BCI officers, are trying to cover-up their lack of oversight and the possible corruption of a former member, I am being used as a scape-goat and subjected to a career debilitating internal investigation which has damaged my professional reputation and caused me much distress. The reason for this I base on my race and the historical treatment by white State Police personnel and supervisors of those assigned to the Tarrytown barracks of Troop T. In order to provide more information as to the basis of this part of my complaint it is necessary to give some background on SP Tarrytown. For many years, it was a place of exile for Troopers who had gotten in trouble, perceived or real. It was also always a disproportionately minority populated station, because it was close to New York City and many minority Troopers who were from New York City, who wanted to be close to home, would naturally gravitate there. I was one of those Troopers. SP Hawthorne experienced a similar phenomenon, because of its proximity to the City and suffered from the same racial ignorance that Tarrytown suffered from. I worked as a uniform Trooper in Tarrytown back in the eighties, when it was considered a minority dumping ground. When I first got there, I was bombarded with the question, "what did you do?" Although the answer was that I had done nothing wrong and in fact went back there as an Investigator after a few years in another troop in order to mentor younger troopers, the stigma of an assignment to Tarrytown always remained for anyone working at that station. Over the years the SP Tarrytown station and the surrounding areas covered by Troopers from that station has derisively been referred to as SP Uganda, SP Africa, SP Harlem and SP Puerto Rico by white members of the State Police including supervisors. This offensive nickname has been repeated outside of the State Police to members of other law enforcement agencies in Westchester County. There is a culture within the State Police that Troopers and Investigators working near New York City and assigned to SP Tarrytown, and to an extent SP Hawthorne, are inferior to their white State Police counterparts, that we are incompetent and cannot be trusted. This is an attitude that has been perpetuated and fostered over the years by State Police management and supervisory personnel. This attitude has led to certain Troop K commissioned officers, Captain Lisa Loughran, Lieutenant Dominick Chiumento, Lieutenant James Murphy, and Major Michael Kopy to treat me differently than similarly situated white State Police members. As a result of the internal investigation I was immediately transferred, not allowed to have access to the evidence locker, subjected to a publicized transfer that served to notify other State Police members I was under suspicion in an internal investigation, placed under close supervision, and disparaged in my professionalism and integrity. A white uniformed Trooper, Seamus Lyons, who was with me on the date of the

evidence transfer, was not transferred from his regular duty station or barred from handling evidence. A white female Investigator, Kim Campos, who is the Troop K Evidence Custodian and a person who had access to the evidence locker during the time the evidence went missing, was not subject to the same scrutiny as I was and was allowed to remain in her assignment. Investigator Campos remains in her assignment even though she has in the past destroyed evidence prematurely and is widely regarded by her colleagues as not being competent in her position. Lastly, a white Senior Investigator, Robert Bennett, who was the subject of a prior internal investigation based on the theft of 98 Oxycodone pills, was kept in his assignment as the SP Hawthorne BCI supervisor with full access to the evidence locker. Additionally, when he was subsequently transferred he was sent to a more prestigious assignment, supervisor of the Troop K Major Crimes Unit, which was a closer commute from his home in Kingston. Robert Bennett was eventually allowed to retire from the New York State Police with full retirement benefits, honored at a Troop K Awards Dinner upon his retirement and taken out to lunch by Troop K BCI supervisors on his last day of work. He was also allowed by Lieutenant Chiumento to clear out his office at SP Hawthorne without supervision even though he had been suspected of taking evidence. During his last day of work Bennett was allowed to remove several boxes from the SP Hawthorne building without being supervised or prohibited from doing so by a commissioned officer of the State Police. One of those boxes contained the case file involving the missing cocaine (which I have been accused of losing/taking) and Bennett dropped the file on an office chair before departing the building.

On or about October 12, 2011 I made an EEO complaint to the State Police EEO office complaining of the above mentioned treatment. I still have no resolution of the complaint from that office. Meanwhile I have been kept under close supervision and stationed away from my original assigned station at a further distance from my residence. I have been unfairly kept the subject of an internal investigation for over one year while similarly situated white State Police employees who have actual culpability in the missing evidence items have not been subjected to the same treatment.

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

Sign your full legal name

Subscribed and sworn before me
This 22nd day of October , 20 12

Signature of Notary Public

**Terrence P. Dwyer**
**Notary Public State of New York**
**Qualified in Dutchess County**
**My Commission Expires** 04/20/14
**No. 4995186**

County: Dutchess        Commission expires: 04/20/14

*Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.*

9

**Witnesses:**

**The following people saw or heard the discrimination and can act as witnesses:**

Name: Shannon Morrison     Job title: Investigator

Telephone number: 914    742    6400

Relationship to me?: co-worker

What did this person witness?: The different way I was treated & the conduct & treatment of Robert Bennett


Name: Joanne Leoni     Job title: Senior Investigator

Telephone number: 914    742    6400

Relationship to me: present supervisor

What did this person witness? The different way I have been treated & kept apart from regular work activity


*If you have more witnesses, please write their names and information on a separate sheet of paper and attach it to this form. Please do not write on the back of this form.*


**Additional Details:**

**Did you report or complain about the discrimination to someone else?**
*(If you told someone, filed a report or sent a letter about the discrimination, please indicate whether you went to a supervisor, a manager, the owner of the company, your human resources office, your union, your housing provider, the police, etc.).*
Yes, to the New York State Police EEO Office. Senior Investigator Jerome John


**Date you reported or complained about discrimination:** 10    12    2011
month    day    year

**How exactly did you complaint about the discrimination?**
*(Who did you talk to about it? Who did you filed a report or make a formal written complaint or union grievance with? What did you say?)*
I spoke with Sr. Inv. Jerome John and provided the information I have outlined in this DHR complaint.


**What happened after you complained?**
*(Was your complaint investigated? Was any action taken in response to your complaint? Did the discrimination stop? Did you experience retaliation for complaining?)*
The complaint was investigated by Sr. Inv. Jerome John but the State Police have not made a determination and have prolonged the EEO matter along with the pending disciplinary matter which the State Police have held over my head for over one year.

12

**Continuation – page 12 complaint form**

**Witnesses:**

**The following people saw or heard the discrimination and can act as witnesses:**

Name: Seamus Lyons                         Job title: Trooper

Telephone number: (845) 521-0334

Relationship to me: co-worker

What did this person witness: He has been witness to the double-standard treatment I have received and saw that I was transferred without cause as well as having suffered through demeaning interviews. He was interviewed by Internal Affairs who accused him of being a liar and said to him that I had asked him to lie and cover up for me.


Name: John Antonelli                         Job title: Zone Sergeant

Telephone number: (845) 405-3624

Relationship to me: co-worker & uniformed zone supervisor

What did this person witness: He too has been a witness to the double-standard treatment that I have received. He has seen that I have been treated differently than white co-workers in the same situation. A State Police supervisor commented to him that I was a liar and that I lost evidence. He also knows that I was transferred without cause and that originally the State Police wanted to transfer me to a station farther from my home but was prevented from doing so because of union intervention.


Name: Skylar King                         Job title: Investigator

Telephone number: (914) 213-9944

Relationship to me: co-worker

What did this person witness: He was my partner in the Tarrytown station and a witness to my being transferred while white employees involved in the situation were left in their stations and positions. He too is a black State Police member and has seen the disparate treatment and knows of the comments made about the black State Police members assigned to the Tarrytown and Hawthorne stations.

Name: Jerome John

Job title: Senior Investigator

Telephone number: (347) 539-0013

Relationship to me: NY State Police EEO Office

What did this person witness: He investigated my complaint to the NY State Police and issued a report which has not been divulged to me yet.  This investigation has been over a year old.

**If you did not report the discrimination, please explain why:**

N/A

**Did the person you are complaining against touch you, hurt you, or physically harm you?**

☐ Yes   ☐ No

*If yes, please explain:*

**Examples of other people who were discriminated against in the same way as you were:**
*(For example, people who were harassed by the same manager, disciplined or terminated for the same reasons, did not receive an accommodation for the same reasons, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*



**Examples of other people who were treated better than you were:**
*(For example, people who were not fired for doing the same thing you were fired for, people who were doing the same job but making more money, people who were allowed to stay in the store while you were told to leave, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*

Robert Bennett, white male, State Police Senior Investigator - he was suspected of taking 98 Oxycodone pills stored in the SP Hawthorne evidence room. He was not transferred during the investigation or prohibited from having access to the evidence locker. Despite evidence of his alleged criminality he was not charged by the State Police. Kim Campos, white female, State Police Investigator, Troop K - Evidence Custodian - she had access to the SP Hawthorne evidence room several times between when I placed the evidence in there on July 28, 2010 and when the items were noticed as missing on or about September 2011. She previously improperly disposed of two (2) other items of evidence associated with the case involving the missing cocaine even though the case was not closed out. (Continued on a separate page).

**Continuation – page 13 complaint form**

**Examples of other people who were treated better than you were:**
Dominick Chiumento, white male, State Police Lieutenant -- he was in charge of the SP Hawthorne BCI, among other Troop K stations, as part of his assigned duty as Troop K BCI Lieutenant and failed in his inspection(s) of the station to notice the missing evidence. Additionally, he has changed evidence forms or authorized other State Police employees to alter evidence forms when evidence items were missing. He was allowed by Captain Loughran and Major Kopy to conduct an internal investigation into misconduct that occurred under his command and had a direct bearing on his career despite indications of his own supervisory malfeasance. This resulted in my being unfairly and unjustly targeted.

Exhibit "2"



# New York State Division of Human Rights
## Complaint Form

**The Division of Human Rights investigates complaints of discrimination based on:**

- **Age** *(if you are at least 18 years of age)*
- **Arrest Record,** *including youthful offender record or sealed conviction record*
- **Conviction Record**
- **Creed / Religion** *(religious belief, practice, or observance)*
- **Disability** *(a physical or mental condition)*
- **Domestic Violence Victim Status**
- **Familial Status** *(if you are pregnant or have children under age 18 in the household)*
- **Genetic Predisposition** *(information from a genetic test)*
- **Harassment of Domestic Workers** *(if you are being sexually harassed or harassed because of your gender, race, national origin, or religion AND you are employed in the home or residence of another person for the purposes of housekeeping, childcare, companionship, or any other domestic service purpose)*
  - ☐ PLEASE CHECK HERE IF YOU ARE A DOMESTIC WORKER
- **Marital Status** *(single, married, separated, divorced, widowed)*
- **Military Status** *(including military reserves)*
- **National Origin** *(the country where you or your ancestors were born)*
- **Race/Color** *(because you are Asian, Black, White, etc.; includes ethnicity)*
- **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above or below)*
- **Sex** *(based on the fact that you area male or female, sexual stereotyping, sexual harassment, or pregnancy discrimination)*
- **Sexual Orientation** *(heterosexual, homosexual, bisexual, asexual, or perceived)*

**The Division investigates complaints only if the discrimination is based on one or more of the above reasons. The Division cannot investigate unfair treatment that does not involve one of these reasons. If you do not see anything in this list that applies to your situation, please contact the Division of Human Rights to speak to a staff member.**

 **New York State Division of Human Rights
Complaint Form**

## Instructions

**If you would like to file a complaint with the Division of Human Rights:**

1) Please fill out this form, answering all of the questions. If you are filling out the form on a computer, please print out the form when you are finished. _**You will not be able to save the completed form**_. If possible, please type. If you are filling out the form by hand, please print.

2) After you fill out the form, please have this complaint form notarized (see Page 9). Please contact our office if you have questions about notarization. Notary services are available at the Division free of charge.

3) Attach copies of any documents that you think will help the Division investigate your case (pay stub, letter of termination, performance evaluation, disciplinary notice, etc.).

4) Return the complaint form to the regional office closest to you (see Page 10).

5) Keep a copy of your complaint, and copies of any documents that you attach, for your own records.

Please feel free to visit our website at _**www.dhr.ny.gov**_

_**If you have any questions, want information, or need help filling out the form, please call one of our offices (see Page 10) to speak to a staff member or make an appointment for a personal meeting.**_



# New York State Division of Human Rights Complaint Form

## CONTACT INFORMATION

**My contact information:**

Name: Noel NJ Nelson

Address: 4784 Boston Post Road     Apt or Floor #: A43

City: Pelham Manor     State: NY     Zip: 10803

## REGULATED AREAS

**I believe I was discriminated against in the area of:**

☑ Employment            ☐ Education               ☐ Volunteer firefighting

☐ Apprentice Training   ☐ Boycotting/Blacklisting  ☐ Credit

☐ Public Accommodations ☐ Housing                  ☐ Labor Union, Employment
*(Restaurants, stores, hotels, movie*                                    Agencies
*theaters amusement parks, etc.)*  ☐ Commercial Space

**I am filing a complaint against:**

Company or Other Name: Division of State Police

Address: 1220 Washington Avenue, Building 22

City: Albany     State: NY     Zip: 12226

Telephone Number: 518 457 3572
          (area code)

Individual people who discriminated against me:

Name: Kevin Gagan          Name: Joseph D'Amico

Title: First Deputy Supt    Title: Superintendent

## DATE OF DISCRIMINATION

The most recent act of discrimination happened on: 03 / 01 / 2013
                                                   month  day  year

3

# DOMESTIC WORKERS

 *Please answer the questions on this page **only if you are a domestic worker**. If you are not a domestic worker, please skip this page and turn to the next page.*

**The Human Rights Law protects you if you are being sexually harassed or harassed because of your gender, race, national origin, or religion AND you are employed in the home or residence of another person for the purposes of housekeeping, childcare, companionship, or any other domestic service purpose**

**Do you live in your employer's home?** ☐ Yes ☐ No

> *If yes, please be sure to fill out the information on Page 11 and provide the name of another person who does not live with you but will know how to contact you if the Division needs to reach you.*

## What did the person you are complaining against do?
*Please check all that apply.*

☐ Harassed me because of my race or color ☐ Harassed me because of my national origin

☐ Harassed me because of my religion ☐ Harassed me because of my gender/sex

☐ Sexually harassed me

## Other protections for Domestic Workers:

As a domestic Worker, you are also entitled to certain protections in the following areas:

- **Minimum Wage** (the lowest hourly wage under the law)
- **Day of Rest** (the amount of time off that you should have each week)
- **Paid Vacation** (the amount of time off that you should have each year)
- **Overtime Pay** (extra money that you receive for working extra hours)
- **Disability Benefits** (payments if you can't work because of illness or injuries)

If you have questions about these topics, please contact:

**New York State Department of Labor**
(518) 457-9000
(888) 4-NYSDOL / (888-469-7365)
TTY/TDD (800) 662-1220
www.labor.ny.gov

 When you have finished answering these questions, <u>please turn to Page 8</u>.

4

## BASIS OF DISCRIMINATION
*Please tell us why you were discriminated against by checking one or more of the boxes below.*

 You do not need to provide information for every type of discrimination on this list. Before you check a box, make sure you are checking it only if you believe it was a reason for the discrimination. Please look at the list on Page 1 for an explanation of each type of discrimination.

**Please note:** Some types of discrimination on this list do not apply to all of the regulated areas listed on Page 3. (For example, Conviction Record applies only to Employment and Credit complaints, and Familial Status is a basis only in Housing and Credit complaints). These exceptions are listed next to the types of discrimination below.

### I believe I was discriminated against because of my:

| | |
|---|---|
| ☐ **Age** *(Does not apply to Public Accommodations)*<br>Date of Birth: | ☐ **Genetic Predisposition** *(Employment only)*<br>Please specify: |
| ☐ **Arrest Record** *(Only for Employment, Licensing, and Credit)*<br>Please specify: | ☐ **Marital Status**<br>Please specify: |
| ☐ **Conviction Record** *(Employment and Credit only)*<br>Please specify: | ☐ **Military Status:**<br>Please specify: |
| ☐ **Creed / Religion**<br>Please specify: | ☐ **National Origin**<br>Please specify: |
| ☐ **Disability**<br>Please specify: | ☑ **Race/Color or Ethnicity**<br>Please specify:<br><br>Back male |
| ☐ **Domestic Violence Victim Status:**<br>*(Employment only)*<br>Please specify: | ☐ **Sex**<br>Please specify: ☐ Female ☐ Male<br>☐ **Pregnancy**<br>☐ **Sexual Harassment** |
| ☐ **Familial Status** *(Housing and Credit only)*<br>Please specify: | ☐ **Sexual Orientation**<br>Please specify: |
| ☑ **Retaliation** *(if you filed a discrimination case before, or helped someone else with a discrimination case, or reported discrimination due to race, sex, or any other category listed above)*<br>Please specify: | |

 Before you turn to the next page, please check this list to make sure that you provided information *only* for the type of discrimination that relates to your complaint.

# EMPLOYMENT DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of employment. If not, turn to the next page.*

**How many employees does this company have?**
☐ a) 1-3     ☐ b) 4-14     ☐ c) 15 or more     ☑ d) 20 or more     ☐ e) Don't know

**Are you currently working for the company?**

☐ Yes

Date of hire:      ( _____ _____ _____ )     What is your job title? _____
                        Month        day          year

■ **No**

Last day of work:   ( __03__ __27__ __2013__ )     What was your job title? _Investigator_
                        Month        day          year

☐ I was not hired by the company

Date of application: ( _____ _____ _____ )
                          Month       day          year

## *ACTS OF DISCRIMINATION*

**What did the person/company you are complaining against do? Please check all that apply.**

☐ Refused to hire me

☐ Fired me / laid me off

☐ Did not call me back after a lay-off

☐ Demoted me

☐ Suspended me

☐ Sexually harassed me

☐ Harassed or intimidated me (other than sexual harassment)

☐ Denied me training

☐ Denied me a promotion or pay raise

☐ Denied me leave time or other benefits

☐ Paid me a lower salary than other workers in my same title

☐ Gave me different or worse job duties than other workers in my same title

☐ Denied me an accommodation for my disability

☐ Denied me an accommodation for my religious practices

■ Gave me a disciplinary notice or negative performance evaluation

■ Other:  Initiated disciplinary charges against me

6

# HOUSING DISCRIMINATION

*Please answer the questions on this page only if you were discriminated against in the area of housing. If not, turn to the next page.*

## Who discriminated against you?

☐ Builder      ☐ Bank or other lender      ☐ Manager / Superintendent

☐ Owner / Landlord      ☐ Salesperson      ☐ Other: _____

☐ Co-op Board      ☐ Condo Association

## What kind of property was involved?

☐ Single-family house      ☐ Mobile home      ☐ Building with 2-4 apartments

☐ Two-family house      ☐ Commercial Space      ☐ Building with 5 or more apartments

☐ Other: _____

**Does the owner live on the property?** ☐ Yes   ☐ No

**Was this property being sold or being rented?**

☐ Being sold    ☐ Being rented

## Address of property:

Address: _____ Apt or Floor #: _____

City: _____ State: _____ Zip: _____

## Are you currently living there?

☐ Yes      ☐ No

## *ACTS OF DISCRIMINATION*

**What did the person you are complaining against do? Please check all that apply.**

☐ Refused to rent or sell to me

☐ Evicted me / threatened to evict me

☐ Denied me access for my disability

☐ Denied me equal terms, privileges, or facilities that other tenants were given

☐ Discriminated against me in lending or financing

☐ Advertised in a discriminatory way

☐ Harassed me based on my sex, national origin, race, disability, etc.

☐ Other: _____

7

*DESCRIPTION OF DISCRIMINATION* - for <u>all complaints</u> *(Public. Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)*

*Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory.*
**PLEASE TYPE OR PRINT CLEARLY.**

I filed a complaint with NYS DHR on November 16, 2012, with a rebuttal to the respondent's answer filed on January 7, 2013. The case number is 1015680, Noel NJ Nelson v. Division of State Police. Since the dates of those filings I was served with disciplinary charges on March 1, 2013. These charges were filed in retaliation for exercising my rights under the New York State Human Rights Law. As a result of the filing of these charges and due to the excessive amount of stress and turmoil this ordeal has caused me to retire. Although I retired with 29 years of service to the State Police and received a retirement letter from the Superintendent of State Police I have been denied my retirement identification card. Also, despite the March 2012 completion of an internal investigation and audit related to the evidence problems at the Hawthorne station the Division of State Police did not file disciplinary charges against me until March 2013. This was several months after I filed my original complaint in case number 1015680 with your office. After the filing of my complaint the State Police initiated a new investigation despite there having been two prior investigations completed into the matter. Based on information and belief there has not been any disciplinary action taken against the Troop K Evidence Custodian Inv. Kim Campos, a white female, who was the subject of two founded personnel complaints in the March 2012 report. Additionally, the Division of State Police in response to my original complaint cited several alleged incidents related to my paperwork and the administration of my cases as a reason for transferring me. The claim was that I needed closer supervision. Yet, the Division of State Police's records indicate other Investigators whose paperwork and administration of their cases required that they be under more scrutiny based on report errors, misplace evidence and other administrative problems. None of these other Investigators, all who are white males, were ever transferred or disciplined. Based on the Division of State Police criteria these Investigators should have been transferred or re-trained. However; I was disciplined despite evidence that a white male supervisor with a history of substance abuse problems was a suspect in the theft of evidence and who exhibited extremely strange and erratic behavior when evidence had been reported missing.

If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form. **PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.**

### NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing),as applicable. This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained the in aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

Sign your full legal name

Subscribed and sworn before me
This 22 day of July , 20 13

Signature of Notary Public

County: Westchester Commission expires:

MARISSA RIANO
Notary Public, State of New York
Qualified in Westchester County
Reg. #01RI6248533
My Comm. Exp. Sept. 19, 2015

**Please note: Once this form is notarized and returned to the Division, it becomes a legal document and an official complaint with the Division of Human rights. After the Division accepts your complaint, this form will be sent to the company or person(s) whom you are accusing of discrimination.**

9

# NYS Division of Human Rights Offices

*If you wish to contact the Division, please contact the office closest to you.*

**Headquarters:**
NYS Division of Human Rights
One Fordham Plaza, 4th Floor
**Bronx, NY 10458**

**Albany**
NYS Division of Human Rights
Agency Building 1, 2nd Floor
Empire State Plaza
Albany, New York 12220
Telephone No. (518) 474-2705

**Brooklyn**
NYS Division of Human Rights
55 Hanson Place, Room 1084
Brooklyn, New York 11217
Telephone No. (718) 722-2385

**Long Island** (Nassau)
NYS Division of Human Rights
175 Fulton Avenue, Suite 404
Hempstead, New York 11550
Telephone No. (516) 538-1360

**Manhattan**
NYS Division of Human Rights
Adam Clayton Powell State Office Building
163 West 125th Street, 4th Floor
New York, New York 10027
Telephone No. (212) 961-8650

**Rochester**
NYS Division of Human Rights
One Monroe Square
259 Monroe Avenue, Suite 308
Rochester, New York 14607
Telephone No. (585) 238-8250

**Office of Sexual Harassment Issues**
NYS Division of Human Rights
55 Hanson Place, Room 900
Brooklyn, New York 11217
Telephone No. (718) 722-2060

**Binghamton**
NYS Division of Human Rights
44 Hawley Street, Room 603
Binghamton, New York 13901
Telephone No. (607) 721-8467

**Buffalo**
NYS Division of Human Rights
The Walter J. Mahoney State Office Bldg.
65 Court Street, Suite 506
Buffalo, New York 14202
Telephone No. (716) 847-7632

**Long Island** (Suffolk)
NYS Division of Human Rights
New York State Office Building
250 Veterans Memorial Highway, Suite 2B-49
Hauppauge, New York 11788
Telephone No. (631) 952-6434

**Peekskill**
NYS Division of Human Rights
8 John Walsh Blvd., Suite 204
Peekskill, New York 10566
Telephone No. (914) 788-8050

**Syracuse**
NYS Division of Human Rights
333 E. Washington Street, Room 543
Syracuse, New York 13202
Telephone No. (315) 428-4633

10

## *ADDITIONAL INFORMATION*

*The next three pages are for the Division's records and **will not be sent out** with the rest of your complaint.*

### Contact information

My primary telephone number:
914   738   4044
(area code)
- [x] home phone
- [ ] work phone
- [ ] cell phone
- [ ] other _____

My secondary telephone number:
914   497   7731
(area code)
- [ ] home phone
- [ ] work phone
- [x] cell phone
- [ ] other: _____

My email address: NNJNELSON@VERIZON.NET

Last four digits of my Social Security number: 0269

Contact person *(someone who does not live with you but will know how to contact you if the Division cannot reach you)*:

Name: Terrence P. Dwyer

Telephone number: 845   707   0963
(area code)

Relationship to me: Attorney

## Special Needs

I am in need of: a) A translator *(if so, which language?)*: _____

b) Accommodations for a disability: _____

c) Other: _____

## Settlement / Conciliation:

To settle this complaint, I would accept: *(Please explain what you want to happen as a result of this complaint. Do you want a letter of apology, your job back, lost wages, an end to the harassment, etc?)*

Issuance of my retirement identification card and firearms permit, lost wages in overtime.

**Witnesses:**

**The following people saw or heard the discrimination and can act as witnesses:**

Name: Brain Meier                                    Job title: Senior Investigator

Telephone number: 845        551        6031

Relationship to me: Union delegate

What did this person witness?: Conversation with 1st Deputy Supt reference to my DHR case

Name: Joseph T. Csanko                               Job title: Trooper

Telephone number: 845        807        7170

Relationship to me: Uniform Trooper delegate

What did this person witness? Conversation with 1st Deputy Supt reference to my DHR case

*If you have more witnesses, please write their names and information on a separate sheet of paper and attach it to this form. Please do not write on the back of this form.*

**Additional Details:**

**Did you report or complain about the discrimination to someone else?**
*(If you told someone, filed a report or sent a letter about the discrimination, please indicate whether you went to a supervisor, a manager, the owner of the company, your human resources office, your union, your housing provider, the police, etc.).*

Yes, an initial EEO complaint was filed with my employer in October 2011

**Date you reported or complained about discrimination:** 10 _____  2011
                                                          month      day    year

**How exactly did you complaint about the discrimination?**
*(Who did you talk to about it? Who did you filed a report or make a formal written complaint or union grievance with? What did you say?)*

Only with regard to my initial discrimination complaint I filed with NY State Police Human Resources, Senior Investigator Jerome John.  For the retaliation complaint I did not file a complaint.

**What happened after you complained?**
*(Was your complaint investigated? Was any action taken in response to your complaint? Did the discrimination stop? Did you experience retaliation for complaining?)*

There was no action taken that I was aware of or notified of by EEO within the 30 day period required.

Last revised on 11/21/10           12

**If you did not report the discrimination, please explain why:**

I resigned from service with the Division of State Police in March 2013 after being served with the disciplinary charges and had previously filed an EEP compliant with my employer which did not yield any results or response

**Did the person you are complaining against touch you, hurt you, or physically harm you?**

☐ Yes ☒ No

*If yes, please explain:*

**Examples of other people who were discriminated against in the same way as you were:**
*(For example, people who were harassed by the same manager, disciplined or terminated for the same reasons, did not receive an accommodation for the same reasons, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*

**Examples of other people who were treated better than you were:**
*(For example, people who were not fired for doing the same thing you were fired for, people who were doing the same job but making more money, people who were allowed to stay in the store while you were told to leave, etc.).*
*If you are complaining about discrimination relating to race, national origin, age, religion, etc. please describe their races, national origins, ages, religions, etc.*

Kimberly Campos, white female Investigator
Robert Bennett, white male Senior Investigator

Exhibit "3"

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Noel N. Nelson
4784 Boston Post Road, Apt. A43
Pelham Manor, NY 10803

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2013-00694 | Holly M. Woodyard, State & Local Program Manager | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Kevin J. Berry,
District Director

February 12, 2015
(Date Mailed)

Enclosures(s)

cc:

NEW YORK STATE, EXECUTIVE DEPARTMENT
Attn: Steven V. De Braccio, Excelsior Fellow
The Harriman Campus, Building 22
1220 Washington Avenue
Albany, NY 12226

NEW YORK STATE, DEPARTMENT OF
CORRECTIONS & COMMUNITY SUPERVISION
Attn: Herman Reinhold, Sr. Attorney
Office of Diversity Management
The Harriman State Campus, Building 2
1220 Washington Avenue
Albany, NY 12226-2050

Enclosures(s)

cc:

**NEW YORK STATE POLICE**
**Attn: Thomas A. Capezza, Esq.**
**Division of Headquarters**
**The Harriman State Campus, Building 2**
**1220 Washington Avenue**
**Albany, NY 12226-2050**

**Terrence P. Dwyer, Esq.**
**Law Office**
**P.O. Box 1996**
**Poughkeepsie, NY 12601**

## DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a *Pro Se* complaint. Every district court has either a clerk or a staff attorney who can assist you in filing *Pro Se*. To find out how to file a *Pro Se* complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may very from district to district.

You may, however, wish to retain a lawyer if you chose. Whether you retain a private attorney, or file *Pro Se*, <u>you must file your suit in the appropriate court within 90 days of receiving this mailing</u>.

## WHAT IF I WANT A LAWYER BUT CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists *Pro Se* complainants for specific instructions on how to seek counsel. The appointment of counsel in any *Pro Se* complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $350.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists *Pro Se* complainants for information concerning the necessary procedure to request that the filing fee be waived.

## HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association
(800) 285-2221
www.abanet.org

New York State Bar Association
(800) 342-3661
www.nysba.org

New York City Bar
Legal Referral Service
(212) 626-7373

National Employment Lawyers Association
Referral Service
(212) 819-9450
http://www.nelany.com/EN

Other local Bar Associations in your area may also be of assistance.

## HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a determination, but time frames may vary. If you file a suit, and wish to request a copy of your investigative file, you or your attorney should make the request in writing as soon as possible. If you file suit, you or your attorney should also notify this office when the lawsuit is resolved.

# FACTS ABOUT FILING
# AN EMPLOYMENT DISCRIMINATION SUIT
# IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a lawsuit.

## WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. However you should contact the court directly if you have questions where to file your lawsuit. New York State has four federal districts:

- The United States District Court for the Southern District of New York is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester. (212) 805-0136 http://www.nysd.uscourts.gov

- The United States District Court for the Eastern District of New York is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk. (718) 613-2600 http://www.nyed.uscourts.gov

- The United States District Court for the Western District of New York is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates. (716) 551-4211 http://www.nywd.uscourts.gov

- The United States District Court for the Northern District of New York is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneida, Onandaga, Oswego, Ostego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's *Pro Se* Attorney has offices at 10 Broad Street in Utica New York. (315) 234-8500 http://www.nynd.uscourts.gov

## WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit must be filed in U.S. District Court within **90 days** of the date you receive the enclosed EEOC Notice of Right To Sue. Otherwise, you will have lost your right to sue.

(Over)