UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEAMUS LYONS and NOEL NELSON,

                            Plaintiffs,

        -against-

STATE OF NEW YORK, DIVISION OF POLICE
and JOSEPH D'AMICO, in his individual capacity,

                            Defendants.

15 Civ. 3669 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Seamus Lyons ("Lyons") and Noel Nelson ("Nelson") (together, "Plaintiffs") commenced this action by complaint filed May 12, 2015 and amended for the second time on August 24, 2015, against defendants the State of New York, Division of Police and Joseph D'Amico ("Defendants"). Plaintiff Nelson asserts racial discrimination and retaliation claims in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"), and both Plaintiffs bring causes of action for retaliation pursuant to 42 U.S.C. § 1981.

Defendants now move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) failure to state a claim upon which relief can be granted. For the following reasons, Defendants' motion is DENIED.

## BACKGROUND

All facts are taken from the Second Amended Complaint ("SAC") and are accepted as true for the purposes of this motion. (*See* SAC, ECF No. 15.) Where noted, certain additional

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/22/2016

facts are taken from Nelson's New York State Division of Human Rights' ("NYSDHR") complaints.[1]

Plaintiffs Seamus Lyons and Noel Nelson worked for the New York State Police ("NYSP") for approximately 27 years and 12 years, respectively. (SAC ¶¶ 1-2, 8.) Nelson—an African-American male—was hired as a trooper in 1984 and promoted to investigator in 1990. (*Id.* ¶ 9.) On July 28, 2010, Nelson received an order to transport evidence from Mid-Hudson Regional Crime Lab in Newburgh, New York to an evidence locker at the Hawthorne barracks. (*Id.* ¶ 11.) Lyons drove Nelson to Newburgh and back to Hawthorne, where Nelson secured the evidence and signed it in to the evidence locker. (*Id.* ¶ 13.) Nelson also recorded the delivery in a log maintained at the Hawthorne station. (*Id.* ¶ 14.) Sometime in the next fifteen months, the evidence was discovered to be missing. (*Id.* ¶ 15.) As a result, NYSP commenced an internal investigation into the missing evidence in September 2011. (*Id.* ¶ 30.)

Effective October 10, 2011, while the investigation was pending, NYSP transferred Nelson from Tarrytown to Hawthorne, stripped him of his prior jurisdiction as an investigator, disallowed him access to the evidence locker, and curtailed his overtime pay. (*Id.* ¶¶ 43-45.) No similar action was taken against defendant Lyons. (*Id.* ¶ 46.) Following his transfer, Nelson was subjected to extensive micro-management, forbidden from handling evidence, disallowed from continuing, commencing, or fully handling criminal investigations. (*Id.* ¶¶ 49-50.) The other investigators—all Caucasians—whose evidence was subject to potential tampering had not been similarly transferred. (*Id.* ¶¶ 55-56.) On November 7, 2011, a senior investigator assigned to the

---

[1] A court may consider EEOC and NYSDHR complaints on a motion to dismiss without converting the motion to one for summary judgment. *Musaji v. Banco de Brasil*, No. 10 Civ. 8541, 2011 WL 2507712, at *4, n. 4 (S.D.N.Y. June 21, 2011) (quoting *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010)) ("'with respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents [on a motion to dismiss] because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims.'").

NYSP Office of Human Resources advised that during the course of the missing evidence investigation, none of the white investigators were removed from their assignments as Nelson had been and that there was no reason to support his continued reassignment. (*Id.* ¶¶ 57-58.) Nevertheless, Nelson remained in the new assignment. (*Id.* ¶ 59.)

During the course of the missing evidence investigation, between October 5 and December 28, 2011, Lyons was ordered to provide four separate statements concerning the evidence transfer conducted by Lyons and Nelson. (*Id.* ¶ 36.) Lyons alleges that it became apparent that Defendants sought to blame Nelson for the missing evidence and were seeking incorrect information from Lyons. (*Id.* ¶ 37.) In December 2011, Defendants confronted Lyons in an interview with records that demonstrated that rather than drive directly from Mid-Hudson Regional Crime Lab to the Hawthorne barracks, he remained in Orange County for some time. (*Id.* ¶ 39.) Upon review of these records, Lyons recalled that he and Nelson sought out a witness on an unrelated case, spoke to an investigator, and purchased a pie from a farm stand before returning to the Hawthorne barracks. (*Id.* ¶ 41.)

 The investigation concluded with a report of March 30, 2012, which did not place any blame for the lost evidence on Nelson or Lyons. (*Id.* ¶¶ 33-34.) Instead, the report concluded that Investigator Kim Campos—a Caucasian female who was the evidence custodian at Hawthorne— was responsible in that she failed to exercise diligence in the performance of her duties. (*Id.* ¶ 31.) Defendants did not bring charges against either Plaintiff as a result of the investigation. (*Id.* ¶ 61.)

After the conclusion of the investigation, Nelson continued to be marginalized and denied the opportunity to perform his job functions, so he filed a charge of racial discrimination with NYSDHR on November 16, 2012. (*Id.* ¶ 68.) In his charge, Nelson named Lyons as a potential

witness to "the double-standard treatment." (*Id.* ¶ 69.) In the course of the NYSDHR investigation of Nelson's complaint, Lyons corroborated Nelson's statement that he delivered the evidence to Hawthorne on July 28, 2010, that he accompanied Nelson for the transfer, and that he had not been subject to similar disparate treatment. (*Id.* ¶ 71.) Following the filing of the NYSDHR complaint, NYSP initiated another investigation despite the completion of two prior investigations into the matter. (*See* Affirmation of Neil Shevlin, ECF No. 21, Exhibit 4, at 8.).

In early March 2013, despite not bringing charges against Plaintiffs for the missing drug evidence, Defendants charged both Plaintiffs with failing to comply with a lawful directive by providing false statements during its internal investigation. (*Id.* ¶ 74.) Having been subjected to "30 months of disparate treatment, reduced responsibilities, and false accusations," Nelson resigned on March 27, 2013 in light of the new disciplinary charges. (*Id.* ¶ 75.)

Lyons did not resign, and on April 17, 2013, Defendant D'Amico appointed a three-person Board of Hearing to consider the charges against Lyons. (*Id.* ¶ 76.) The Board issued its findings on May 8, 2013, recommending that Lyons be suspended for 60 days without pay. (*Id.* ¶ 78.) Around May 13, 2013, Lyons provided a witness statement to NYSDHR regarding Nelson's discrimination complaint, and NYSDHR made reference to Lyons' statement in their finding of probable cause issued May 15, 2013. (*Id.* ¶¶ 79, 81.) On May 30, 2013, Defendant D'Amico drafted a memorandum terminating Lyons' employment despite the Board's recommendation, presented Lyons with the memorandum, and gave him ten minutes to decide whether to accept his termination or resign. (*Id.* ¶¶ 83-85.) As a result, under pressure, Lyons resigned. (*Id.* ¶ 87.)

Lyons filed an Article 78 petition on September 13, 2013 challenging the determination of the Board and his subsequent effective termination. *Lyons v. D'Amico*, 129 A.D.3d 1238 (N.Y. App. Div. 2015). The Third Department found that the Hearing Board's determination was

supported by substantial evidence and Lyons' punishment did not shock the court's sense of fairness. *Id*. at 1240.

On July 22, 2013, while Nelson's first NYSDHR complaint was pending and after Lyons' termination, Nelson filed another complaint with NYSDHR alleging that he was served with disciplinary charges on March 1, 2013 in retaliation for filing his first NYSDHR complaint. (*Id.* ¶ 4; Affirmation of Neil Shevlin, ECF No. 21, Exhibit 4, at 8.) Nelson includes additional retaliatory acts, including refusal to provide him with a retirement identification card, commencing a third investigation into his actions relative to the missing drugs, and filing disciplinary charges. (Affirmation of Neil Shevlin, ECF No. 21, Exhibit 4, at 8.) Nelson received a right to sue letter from the EEOC for his second complaint on October 28, 2014, and his right to sue letter for the first complaint was dated February 12, 2015. (Affirmation of Neil Shevlin, ECF No. 21, Exhibits 3 and 6.)

Plaintiffs allege that similarly situated white employees were not treated the same way for similar misconduct. For example, in March 2011, before the evidence delivered by Nelson was discovered missing, NYSP discovered 98 Oxycodone pills were missing from the evidence locker. (*Id.* ¶ 18.) NYSP commenced an investigation and determined that Senior Investigator Robert Bennett—who was responsible for Hawthorne's evidence locker—was a "target" in the missing narcotics case. (*Id.* ¶¶ 17-20, 27.) The investigation revealed that Senior Investigator Bennett had an alcohol abuse problem; his wife had a drug addiction; and Bennett was in receipt of several unauthorized pharmaceutical prescriptions. (*Id.* ¶¶ 19, 21-23.) Nevertheless, Bennett was not brought up on disciplinary charges, retained access to the evidence locker throughout the investigation, and NYSP permitted him to retire. (*Id.* ¶¶ 20, 26.)

## STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must thus "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief. *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I.    Nelson's Title VII Discrimination Claims are not Time Barred

Defendants move to dismiss Nelson's Title VII discrimination claims on the basis that the claims are untimely. Title VII's statute of limitations bars claims based on events occurring more than 300 days prior to filing a charge of discrimination with a state or local employment agency. 42 U.S.C. § 2000e–5(e)(1); *Lange v. Town of Monroe*, 213 F. Supp. 2d 411, 418 (S.D.N.Y.

2002). *See also Butts v. City of New York Dep't of Hous., Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir. 1993) ("In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC [or the state agency] is 300 days."). Nelson filed his first NYSDHR complaint on November 16, 2012. Defendants assert that, therefore, any claims stemming from discriminatory conduct occurring before January 21, 2012 (300 days prior to November 16, 2012) are time-barred. (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Memo"), ECF No. 20, at 13.) In response, Nelson contends that the claims are not barred because he was subject to an ongoing policy of discrimination, constituting a continuing violation. (Memorandum in Opposition to Defendants' Motion to Dismiss ("Pls.' Memo"), ECF No. 22, at 9-12.)

"[A] continuing violation may be found 'where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Quinn v. Green Tree Credit Corp*, 159 F.3d 759, 766 (2d Cir. 1998) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)), *abrogated in part on other grounds, National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). "Conduct that has been characterized as a continuing violation is 'composed of a series of separate acts that collectively constitute one unlawful employment practice.'" *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (citing *Nat'l R.R. Passenger Corp*, 536 U.S. at 111 (internal quotation marks omitted)) (additional internal citations omitted). "Courts in the Second Circuit have viewed continuing violation arguments with disfavor. Essentially, the 'continuing violation' doctrine is only applicable when there is a specific 'policy or mechanism' of discrimination

being committed by a defendant[,] and 'multiple incidents of discrimination, *even similar ones*, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" *Kpaka v. City Univ. of New York*, No. 14-CV-6021 (RA), 2016 WL 4154891, at *5 (S.D.N.Y. Aug. 2, 2016) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)) (internal citations omitted). Accordingly, "completed acts such as a termination through discharge or resignation, a job transfer or discontinuance of a particular job assignment, are not acts of a continuing nature .... Nor can a continuing violation be established merely because the claimant continues to feel the effects of a time-barred discriminatory act or merely because the claimant continues his or her employment...." *McPhee v. New York City Health & Hosps. Corp.*, No. 07-CIV-1053PKCDCF, 2008 WL 3930089, at *4 (S.D.N.Y. Aug. 25, 2008) (internal citations, quotation marks, and alterations omitted).

Here, Nelson was transferred October 10, 2011, outside of the 300-day period. It is well-settled law that "transfers ... are [] discrete acts which do not constitute a continuing violation" for statute of limitations purposes. *Crosland v. City of New York*, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001). *See also Nat'l R.R. Passenger Corp.,* 536 U.S. at 114 (failure to promote and denial of transfers are discrete acts of discrimination that are not amenable to continuing violation exception); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir. 1997) ("Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature."); *Fanelli v. New York*, 51 F. Supp. 3d 219, 228 (E.D.N.Y. 2014) ("it is well-established that transfers are discrete acts that do not constitute a continuing violation for statute of limitations purposes"); *Walia v. Napolitano*, 986 F. Supp. 2d 169, 179–80 (E.D.N.Y. 2013) (finding that undesirable work transfers are discrete acts that cannot be considered as part of an ongoing pattern or policy

of discrimination). Therefore, Nelson's transfer was a discrete act, not a continuing violation, and is time-barred under Title VII.

Nelson invokes *Vega v. Hempstead Union Free Sch. Dist.* in arguing that, because he was subject to ongoing discriminatory acts, a continuing violation does exist. 801 F.3d 72 (2d Cir. 2015). *Vega*, however, does not stand for this proposition. In *Vega*, the plaintiff claimed that he was assigned more work on a discriminatory basis both before and after the statutory limitations period had expired. *Id.* at 80. The plaintiff, however, did not attempt to avail himself of—and the court did not invoke—the continuing violation doctrine. *Id.* at 80, n.4. Instead, the court held that, to the extent Vega was given extra work on a discriminatory basis within the statutory limitations period, these claims are not time-barred, "as each incident of discrimination or retaliation constitutes a separate actionable unlawful employment practice." *Id.* at 80 (internal alterations and citations omitted). Vega alleged that he "*began*" to be assigned more work outside of the statutory limitations period but also that the defendants were "*still*" committing these acts in the period that would be considered timely. *Id.* As a result, the court noted that the assignments were "discrete acts" and therefore claims based on these acts that fall within the statutory period are timely. *Id.* at 79–80. ("identifiable discrete actions are not time-barred simply because they occurred as part of an ongoing pattern of discrimination or retaliation that began outside the statutory period.") The court did not hold, however, that all of the discriminatory acts constituted a single, continuing violation.

In the instant case, Nelson draws a comparison to *Vega* in that he continued to be marginalized and denied the opportunity to perform his job functions well within the statutory period. When reading the complaint to raise the strongest arguments it suggests, as the Court must do at this stage, the allegation that Nelson "continued to be marginalized" encompasses his

earlier allegation that he was subjected to extensive micro-management; forbidden from handling evidence; disallowed from continuing, commencing, or fully handling criminal investigations; and forced to curtail his overtime. Having held that the transfer was a discrete, untimely act, the Court is left to consider these actions—occurring within the statutory period—as separate acts of discrimination. As in *Vega*, to the extent Nelson was subject to these discriminatory acts after January 21, 2012, the occurrences are discrete acts within the limitations period.[2]

However, "to defeat a motion to dismiss ... in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (quoting *Galabya v. N.Y.C. Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000)). "The prohibition against discrimination is not limited to pecuniary emoluments, but includes discriminatorily-motivated diminution of duties." *Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 789, 791 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also Hussey v. New York State Dep't of Law/Office of Atty. Gen.*, 933 F. Supp. 2d 399, 411 (E.D.N.Y. 2013) (citing *Castro v. New York Bd. of Educ. Personnel,* No. 96 Civ. 6314(MBM), 1998 WL 108004 at *6 (S.D.N.Y. March 12, 1998)) ("A reduction in job duties and increased supervision at work may constitute materially adverse employment actions for the purpose of Title VII."). In the Second Circuit, the standard

---

[2] The Administrative Law Judge ("ALJ") hearing the NYSDHR claim concluded that Nelson eventually resumed adopting cases and regained access to evidence. (Affirmation of Neil Shevlin, ECF No. 21, Exhibit 3, ¶¶ 40-41.) However, the findings of a state agency are not preclusive as to Nelson's Title VII claims, and, in any event, it is certainly possible that Nelson remained subject to the reduced duties within the statute of limitations period. *Arroyo v. WestLB Admin., Inc*., 54 F. Supp. 2d 224, 230 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 625 (2d Cir. 2000) ("[u]nreviewed state administrative proceedings do not have preclusive effect with respect to claims brought under Title VII").

for assessing whether a reduction in duties is materially adverse "is an objective, rather than a subjective one ... [it] depends upon the circumstances of the particular case and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006) (internal citations and quotation marks omitted). At this juncture, in light of the fact that Defendants have not moved on this ground and the Court must view the allegations in the light most favorable to the nonmoving party, the Court cannot conclude that the changes Nelson experienced were not materially adverse.[3] *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (internal citation omitted) ("Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'"). As a result, Nelson's discrete job changes can sustain a Title VII cause of action and occurred during the limitations period, making Nelson's discrimination claim timely to the extent it is based on these allegations. To the extent the claim is based on Nelson's transfer, the transfer occurred outside the limitations period and the claim is therefore barred.

## II.    Nelson's Title VII Retaliation Claims are not Time Barred[4]

A plaintiff must bring a Title VII law suit within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C § 2000e–5(f)(1). "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the

---

[3] Although Defendants note that the ALJ determined Nelson had not been subject to a "materially adverse change in his employment," (Affirmation of Neil Shevlin, ECF No. 21, Exhibit 3, at 19), this legal conclusion is not binding on this Court. *See Univ. of Tennessee v. Elliott,* 478 U.S. 788, 795 (1986) ("[S]tate agency findings [are not] entitled to preclusive effect in Title VII actions in federal court.").

[4] Defendants assert that Nelson's second NYSDHR complaint repeats the allegations of discrimination from the first complaint. It is true that a plaintiff may not "re-start" the limitations clock by filing a second NYSDHR or EEOC complaint with factually indistinct allegations. *See, e.g., Jeter v. New York City Dep't of Educ.*, 549 F. Supp. 2d 295, 308 (E.D.N.Y. 2008). However, the Court does not read the second complaint to raise the same discrimination claims, but rather, to add a claim of retaliation to an existing case and potentially add additional discriminatory acts that occurred after the filing of the first claim. (*See* Affirmation of Neil Shevlin, ECF No. 21, Exhibit 4, at 8.) Therefore, having held that the discrimination claims from Nelson's first NYSDHR complaint are timely, the only question for the Court is whether the retaliation claims are also timely.

EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1074. As a result, when a claim is reasonably related to a claim alleged in the EEOC charge, that claim need not be presented to the EEOC and is therefore not subject to the 90-day limit. Moreover, "[t]he Second Circuit has consistently found that when, as here, an employee claims that he has suffered retaliation because he pursued a discrimination charge, the subsequent retaliation claim is 'reasonably related' to the underlying discrimination charge." *Id.* at 1402.

Generally, the "reasonably related" analysis is applied to claims of discrimination and/or retaliation that were not pursued before the EEOC or a state agency and are later pursued by a plaintiff in federal court. *See, e.g.*, *Legnani v. Alitalia Linee Aeree Italiane*, S.P.A, 274 F.3d 683, 686–87 (2d Cir. 2001) ("Because [plaintiff's] retaliation claim is reasonably related to her initial discrimination charge, she was not required to file a second charge with the EEOC for that claim."); *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999); *Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464 (S.D.N.Y. 2009). The instant case presents a distinct scenario, however, in that Nelson filed a second complaint with NYSDHR containing additional discrimination allegations—presumably for actions that occurred after the filing of his first NYSDHR complaint—and allegations of retaliation that he currently seeks to pursue in this action. (*See* Affirmation of Neil Shevlin, ECF No. 21, Exhibit 4, at 8.). Nelson received a Notice of Right to Sue for his second complaint (the retaliation complaint) on October 28, 2014, and this action was filed May 12, 2015, well beyond the 90-day time limit. However, the action was filed within 90 days of receiving a Notice of Right to Sue for his first complaint (the discrimination

complaint). Therefore, the question of whether the retaliation claims are timely requires the Court to decide whether the "reasonably related" doctrine applies in this scenario and is satisfied.

It is clear that when a plaintiff files two or more complaints before the EEOC or NYSDHR with *identical* factual allegations, the 90-day time limit begins to run upon receipt of the first right-to-sue letter. *See Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986). "Otherwise, the time limitations of 42 U.S.C. § 2000e-5(f)(1) would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased." *Id.* On the other hand, "[w]here the EEOC has issued two right-to-sue letters addressing distinct allegations, each letter imposes its own ninety day time limit." *Jeter v. New York City Dep't of Educ.*, 549 F. Supp. 2d 295, 307 (E.D.N.Y. 2008). It is still possible, though, that where there are two right-to-sue letters addressing distinct allegations, the allegations of the second complaint may be "reasonably related" to those of the first. Accordingly, "the fact that another [agency] complaint was filed does not eviscerate the 'reasonably related' doctrine." *Johnson v. C. White & Son Inc.,* No. 3:09-CV-240 (CFD), 2009 WL 4878720, at *3 (D. Conn. Dec. 10, 2009).

The Court finds the analysis in *Johnson v. C. White & Son Inc.* particularly instructive. In *Johnson*, the plaintiff filed two complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), one alleging discrimination (the "First CHRO Complaint") and the second alleging retaliation for filing of the first complaint (the "Second CHRO Complaint"). *Johnson*, 2009 WL 4878720, at *1. CHRO released jurisdiction—the equivalent of a right-to-sue letter—as to the Second CHRO Complaint on October 2, 2008 and as to the First CHRO Complaint on October 16, 2008. *Id.* The plaintiff later filed suit on January 21, 2009—within 90 days of the notice for the First CHRO Complaint (the discrimination) but beyond the 90-day time

limit of the notice for the Second CHRO Complaint (the retaliation). *Id.* at \*2. The court noted that the case did not "present the typical 'reasonable relation' argument because [plaintiff] did actually file a CHRO complaint as to those allegations he now claims are reasonably related to his First CHRO Complaint." *Id.* at \*3. Nevertheless, the court held that reasonable relation applies and found that the "allegations of termination and retaliation for his filing of his First CHRO Complaint [were] reasonably related to the allegations of the First CHRO Complaint" and were therefore not barred. *Id.*

Therefore, where two separate EEOC or state agency complaints are filed, the Court need only dismiss (1) charges that mirror or repeat the allegations asserted in the EEOC complaint for which the 90-day period has elapsed, and (2) charges that are not "reasonably related" to the those claims that are timely. *See, e.g., Jeter*, 549 F. Supp. 2d at 295 (holding that although charges mirroring an initial EEOC complaint were untimely and dismissed, timely charges mirroring a second EEOC complaint and those "reasonably related to" those charges need not be dismissed).

Nelson's second NYSDHR complaint alleges that "[s]ince the dates of filing [his first complaint], [he] was served with disciplinary charges … in retaliation for exercising [his] rights" and "after the filing of [his] complaint, the State Police initiated a new investigation despite there having been two prior investigations into the matter." (*See* Affirmation of Neil Shevlin, ECF No. 21, Exhibit 4, at 8.) The complaint also alleges discriminatory acts that are similar in nature to and appear to stem from the initial discriminatory acts and that presumably occurred after the filing of the first NYSDHR complaint. These allegations are clearly "reasonably related" to Nelson's initial allegations of discrimination. As a result, the allegations are timely and the Court denies Defendants' motion to dismiss on this ground.

14

**III.     Nelson is Granted Leave to Amend to Allege Personal Involvement of D'Amico in the Retaliation Claims**

Defendants assert that Nelson failed to allege personal involvement of D'Amico in his retaliation claims. *See Whidbee v. Garzarelli Food Specialties, Inc*., 223 F.3d 62, 75 (2d Cir. 2000) ("A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement.") (internal citation omitted). In response, Nelson requests leave of the Court to amend the SAC to add an allegation that:

> After plaintiff Nelson filed a SDHR charge alleging race discrimination in November 2012, Superintendent D'Amico initiated yet another investigation into Nelson and Lyons' handling of the drug evidence in July 2010. He removed the investigation from the African-American Deputy Superintendent of Internal Affairs who had led the previous investigation, which had not resulted in any charges against either Nelson or Lyons. D'Amico took these actions because of retaliatory animus against Nelson for having filed a charge of race discrimination.

(Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pls.' Opposition"), ECF No. 22, at 16.) It is true that "[i]t is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss." *In re Tamoxifen Citrate Antitrust Litig*., 466 F.3d 187, 220 (2d Cir. 2006), *abrogated on other grounds by F.T.C. v. Actavis, Inc*., 133 S. Ct. 2223, 186 L. Ed. 2d 343 (2013). However, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir. 1993). A defendant may be prejudiced where the amended pleading would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute." *Block*, 988 F.2d at 350. "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.*

15

Here, Nelson does not seek to add a new claim to the SAC but only add a more specific allegation to cure the deficiency asserted by Defendants. Given that Defendants have not yet answered the SAC and that Defendants were clearly aware of D'Amico's potential involvement in commencing the investigation, Defendants cannot show that they would be prejudiced by the amendment. Moreover, the Court sees no justification for denying the request now only to have to address it in a motion to amend in the future, where the same standard would apply. Accordingly, the Court grants Nelson leave to amend to add the above allegation. *See Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, No. 12 CV 3858 KMW JLC, 2012 WL 4513546, at *2 (S.D.N.Y. Oct. 1, 2012) (granting leave to amend where defendant had not yet answered the complaint and there had been no showing of bad faith). In light of the amendment, the Court notes that the additional allegation is sufficient to allege personal involvement of D'Amico and therefore renders Defendants' argument moot.

## IV.    Plaintiffs have Adequately Alleged § 1981 Retaliation Claims

Defendants contend that Plaintiffs have not alleged a prima facie case of retaliation because they have failed to demonstrate the requisite causal connection. In order to state a claim for retaliation, a plaintiff must allege that: "(1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citing *Kessler v. Westchester Department of Social Services*, 461 F.3d at 205–06). Defendants assert that no valid retaliation claims exist because (1) D'Amico had a legitimate, non-retaliatory reason for the disciplinary charges (*i.e.*, Plaintiffs provided false statements in the course of the investigation) and (2) the charges were upheld by NYSP Hearing Board. (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Moving"), ECF No. 20, at 18-19.) These arguments, however, go to the

16

substance of the claim and are therefore improperly made on a motion to dismiss and will not be considered by the Court. *See Day v. City of New York*, No. 15CIV4399GBDHBP, 2015 WL 10530081, at *12 (S.D.N.Y. Nov. 30, 2015), *report and recommendation adopted*, No. 15CV04399GBDHBP, 2016 WL 1171584 (S.D.N.Y. Mar. 22, 2016) (distinguishing plaintiff's burden to *allege* temporal proximity from her burden to *establish* a causal connection).

A causal connection may be alleged indirectly by showing temporal proximity between the protected activity and the adverse employment action, but the Supreme Court has noted that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). However, the Second Circuit has not established a specific delay that defeats an inference of causation. *Gorman–Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554–55 (2d Cir. 2001) (listing cases in the context of Title VII retaliation). Courts have held that a delay of three months was fatal to a showing of causation, *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990), and also that a delay of eight months supported a showing of causation, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980).

A.      *Nelson*

Nelson has adequately pleaded a causal connection. Nelson filed his first NYSDHR complaint November 16, 2012 and was brought up on disciplinary charges four months later, in March 2013. As this Court has previously held, a plaintiff's burden to *plead* a causal connection is much lower than his burden to *establish* a causal connection after the opportunity for discovery. *See Garcia v. Yonkers Bd. of Educ.*, No. 15 CIV. 0767 (NSR), 2016 WL 3064116, at *5 (S.D.N.Y. May 27, 2016) (noting that generally, cases dismissing retaliation claims for

inability to establish a causal connection do so on "motions for summary judgment, where the [p]laintiff—after ample opportunity for discovery—is unable to establish a causal connection with any evidence other than temporal proximity") (collecting cases). *Cf. El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 933 (2d Cir. 2010) (per curiam) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy *appellant's burden to bring forward some evidence of pretext.*") (emphasis added). Moreover, Nelson alleges that an investigation was commenced into his actions despite the existence of two prior, completed investigations. The investigation, if commenced shortly after Nelson's filing of a NYSDHR complaint,[5] may constitute a separate adverse employment action and therefore strengthens Nelson's temporal proximity allegation.[6] Therefore, Nelson has, in fact, alleged a causal connection based on temporal proximity, and he is not required to provide other evidence of causation to survive a motion to dismiss. At this stage, then, Nelson has sufficiently pled a claim for retaliation, and the Court cannot dismiss the claim for lack of a weightier causal

---

[5] Though the ALJ concluded that the investigation was initiated on November 15, 2012, one day before Nelson's first NYSDHR complaint, this finding is not binding on the Court. *Cortes v. MTA New York City Transit*, 802 F.3d 226, 231-32 (2d Cir. 2015) (internal citations omitted) ("Because we do not give preclusive effect to state agency decisions unless they have been reviewed in a state court proceeding, an unreviewed NYSDHR decision is not binding on a trier of fact in [this] action."); *Arroyo v. WestLB Admin., Inc.*, 54 F. Supp. 2d 224, 230 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 625 (2d Cir. 2000) ("[u]nreviewed state administrative proceedings do not have preclusive effect with respect to claims brought under Title VII").

[6] Whether the investigation constitutes an adverse employment action is a question of fact. *Compare Cox v. Onondaga Cty. Sheriff's Dep't,* 760 F.3d 139, 147 (2d Cir. 2014) ("an employer's investigation may constitute a cognizable retaliatory action if carried out so as to result in a hostile work environment, constructive discharge, or other employment consequences of a negative nature, or if conducted in such an egregious manner as to 'dissuade a reasonable worker from making or supporting a charge of discrimination.'") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)), *with Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 568–70 (2d Cir. 2011) (fact-finding investigations that do not themselves qualify as disciplinary action but could lead to disciplinary action, where engaged in with good reason, do not constitute adverse employment actions under *White*). *See also Mullins v. City of New York*, 634 F. Supp. 2d 373, 389 (S.D.N.Y. 2009), *aff'd*, 626 F.3d 47 (2d Cir. 2010) ("active [Internal Affairs Bureau] investigations constituted an adverse action to plaintiffs").

connection allegation. *See Espinal v. Goord*, 558 F.3d 119, 129–30 (2d Cir. 2009) (causal

connection present where six months passed between protected activity and retaliatory beating).

>    B.    *Lyons*

Lyons has also adequately pleaded a causal connection. The SAC alleges that Lyons

resigned under pressure of termination on May 30, 2013, two weeks after NYSDHR made

reference to Lyons' witness statement in their finding of probable cause to support a racial

discrimination claim. *Nielsen v. New York City Comm'n on Human Rights*, No.

94CIV.6360(JSR)(JCF), 1998 WL 20004, at *10, n.2 (S.D.N.Y. Jan. 20, 1998) ("In any temporal

proximity inquiry, it is the moment the employer learns of the protected activity, not the time the

plaintiff actually engaged in it, that is relevant, because an employer does not have the

opportunity to retaliate until he becomes aware of the protected activity.") In addition,

Defendants decided to terminate Lyons despite the Board's recommendation that Lyons be

suspended for 60 days without pay. Two weeks is sufficiently close to establish temporal

proximity, and combined with D'Amico's decision to punish Lyons more heavily than the Board

recommended, Lyons has adequately pleaded a causal connection.

## V.    Lyons is not Collaterally Estopped from Asserting a § 1981 Retaliation Claim against D'Amico

Finally, Defendants contend that Lyons is collaterally estopped from asserting a

retaliation claim by the decision in the Third Department upholding the determination of the

NYSP Board that Lyons was guilty of misconduct. (Defs.' Moving at 21.) Collateral estoppel

applies only if "the issue in question was actually and necessarily decided in a prior proceeding."

*Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir. 1995). Because Lyons' retaliation claim was not

necessarily decided by the Third Department, he cannot be estopped from pursuing that claim

now.

It is true that, under New York law of collateral estoppel, a court decision will have preclusive effect with regard to an issue if "resolution of issue was by necessary implication contained in that which was explicitly decided." *Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002) (internal citations omitted). However, the issue of whether the adverse employment action was retaliatory was not a necessary implication of the decision in the Third Department. The Third Department specifically stated that, "our review is limited to whether the agency's determination [that Lyons is guilty of misconduct] is supported by substantial evidence." *Lyons v. D'Amico*, 129 A.D.3d 1238, 1239, 11 N.Y.S.3d 326, 328 (N.Y. App. Div. 2015). A determination that Defendants had substantial evidence for their conclusion and therefore just cause to terminate Lyons, however, is not dispositive of Lyons' retaliation claim because a successful claim of retaliation does not require that a retaliatory motive be the *only* motive for the adverse employment action. *See Hicks v. Baines*, 593 F.3d 159, 164–65 (2d Cir. 2010) ("A plaintiff can sustain []his burden by proving that 'a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action].'") (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)); *see also Hicks,* 593 F.3d at 164 ("retaliation claims [asserted under § 1981] are analyzed pursuant to Title VII principles"). In other words, termination for cause does not preclude the possibility of termination motivated by unlawful animus. *Leon v. New York City Dep't of Educ.*, 612 F. App'x 632, 635 (2d Cir. 2015). Thus, Lyons' claim for retaliation is not precluded by the findings of the Third Deparment. Defendants' motion to dismiss Lyons' § 1981 retaliation claim is therefore denied.

**VI.     Lyons' Request to Add a § 1983 First Amendment Cause of Action is Granted**

As noted above, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block*, 988 F.2d at 350. More specifically, "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Again, Defendants have not shown that they would be prejudiced, that the request is made in bad faith, or that the amendment would be futile. Accordingly, the Court grants Lyons' request to add a § 1983 First Amendment retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED. However, Plaintiff Nelson's Title VII discrimination claims based on his transfer are dismissed. Plaintiffs request to amend their complaint is GRANTED. Accordingly, the Court respectfully directs the Clerk to terminate the motion at ECF No. 19. Plaintiffs shall file their Third Amended Complaint on or before October 14, 2016. Defendants are directed to thereafter file an answer to the Third Amended Complaint on or before November 14, 2016. The parties are directed to appear for an initial pre-trial conference on December 2, 2016 at 11:30 a.m. The parties are further directed to complete and bring a completed case management plan to the December conference.

Dated:     September 22, 2016
           White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

21